IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-01256-MSK

JAMES HARPER,

      Applicant,

v.

LINDA SANDERS, Warden, U.S.P. Lompoc,

      Respondent,

_____

ORDER DENYING APPLICATION FOR A WRIT OF HABEAS CORPUS
BROUGHT PURSUANT TO 28 U.S.C. § 2241
_____

MARCIA S. KRIEGER, District Judge

      This matter comes before the Court pursuant to Mr. Harper's Amended Application for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (the "Petition") (**# 7**). Respondent filed a Response (**# 17**). Petitioner filed a reply (**# 21**). Having considered the same, the Court

      **FINDS** and **CONCLUDES** that:

## I. Jurisdiction

      The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 2241 and 1331.

## II.  Background

      Mr. Harper is incarcerated at USP-Lompoc, California.  In April 1984, he entered a "Plea and Cooperation Agreement" with the United States, pursuant to which Petitioner pleaded guilty to conspiring with his wife and others to deliver to the Polish People's Republic and the Union of Soviet Socialist Republics materials relating to the

national defense of the United States, which were classified as "confidential" and

"secret" (containing information about intercontinental ballistic missiles, and ballistic

missile defense research and development programs of the United States).  *See*

Amended Application, Ex. H (*Harper v. Crabtree*, No. 95-1573 (D. Or. May 17, 1996),

Findings and Recommendation of United States Magistrate Judge, at 3-4).  Petitioner

engaged in the espionage activities between 1979 and 1981.  *Id.*  In April 1984,

Petitioner and the United States entered into.  *Id.* at 4.

On January 4, 1994, the Parole Commission conducted Petitioner's initial

hearing.  Response, Ex. 3 (Initial Hearing Summary).  The Commission rated

Petitioner's offense behavior as Category Eight severity because the offense involved

espionage and ordered petitioner's case continued to a fifteen-year reconsideration

hearing in 2009.  *Id.*, Ex. 4 (March 2, 1994 Notice of Action).  The Commission advised

Petitioner that "a [decision] more than 48 months above the minimum guideline range is

warranted because: your offense involved conduct which will have a negative affect on

the United States for years and caused damage to the defense of the United States.

Significant defense technology was compromised."  *Id.*  The National Appeals Board

(NAB) affirmed the Commission's decision, but modified the reasons for the decision.

Response, Ex. 6 (Notice of Action on Appeal).  The NAB concluded that, under the plea

agreement, the Commission could not consider evidence of actual damage caused by

Petitioner's conduct, but that it could consider "the potential for harm that [wa]s apparent

to the offender at the time of the offense." *Id.*

The Commission conducted statutory interim hearings in 1999, 2002, 2004, and

2006 and ordered no change to the fifteen-year reconsideration date.  Response, Ex. 7

(Hearing Summaries); Ex. 8 (April 10, 1999 Notice of Action).  Petitioner's fifteen-year reconsideration hearing was held on March 30, 2009.  *Id.*, Ex. 9 (Hearing Summary). The hearing examiner recommended a presumptive parole date.  *Id.*  The executive reviewer disagreed based upon the aggravating factors of Petitioner's crime and his institutional infraction that involved smuggling contraband into the prison.  *Id.*  In 2006, The executive reviewer and a third examiner concurred that Petitioner's case should be continued to expiration.  *Id.*  By Notice of Action, dated May 18, 2009, the Commission adopted the panel's recommendation.  Response, Ex. 10 (Order); Ex. 11 (May 18, 2009 Notice of Action).  The NAB affirmed the Commission's decision on appeal.  *Id.*, Ex. 12 (Notice of Action on Appeal).

Petitioner raises the following claims in his amended § 2241 Application: (1) the Commission failed to adhere to its own regulations by: (a) ignoring information favorable to Petitioner (the plea and cooperation agreement); (b) relying on the reasons of the concurring panel provided after the hearing, without affording notice to Petitioner; and, (c) in issuing a deficient Notice of Action form; (2), (3) the Commission relied upon information from the post sentence report to deny parole, in violation of the immunity provisions of Petitioner's plea and cooperation agreement; (4) the Commission has failed to award Petitioner any credit or consideration for his cooperation with the Government, violation of paragraph 5 of the plea and cooperation agreement; (5) the Commission's decision to continue Petitioner to the expiration of his sentence based on the aggravated nature of his offense behavior is not supported by specific facts; (6) the Commission relied on a false factual predicate in determining that the nature of his offense was aggravated and engaged in double counting; (7)  the Commission failed to

3

"lawfully" determine the seriousness of his offense because the Commission based its determination on the potential for harm that was apparent to Petitioner at the time of the offense and not the estimated actual damage; and, the only evidence of actual or potential damage caused by his offense is immunized information; (8) the Commission should have applied the U.S. Sentencing Guidelines in determining Petitioner's parole eligibility; (9) the Commission deprived Petitioner of due process of law when it issued a decision that was inconsistent with decisions in other parole cases for espionage offenses committed in similar circumstances, contrary to the legislative intent of 18 U.S.C. § 4206(a); (10) the Commission violated the Ex Post Facto Clause because the law in effect at the time of Petitioner's conviction and sentence authorized a maximum reconsideration date of ten years, not fifteen years; (11) the Commission applied the wrong offense severity rating to his institutional infraction of exchanging money for contraband; and (12) the Commission's May 18, 2009 decision to continue Petitioner to expiration of his sentence is arbitrary and capricious because he committed only one institutional infraction during twenty-five years of imprisonment.

**III. Analysis**

**A. Standard of Review**

An action brought by a federal prisoner pursuant to 28 U.S.C. § 2241 is one that challenges the execution of a sentence. *See Davis v. Roberts*, 425 F.3d 830, 833 (10th Cir. 2005). In this type of action, a district court is only authorized to issue the writ of habeas corpus when the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." See § 2241(c)(3). To prevail on a § 2241 petition, a prisoner must demonstrate that in the execution of his sentence he has been denied a

federal constitutional or statutory right.  Mr.  Harper claims that his rights have been violated by the Parole Commission's decision to deny parole and continue him to the expiration of his sentence.

The federal habeas court's review of a parole decision is limited.

> The Commission's decision will stand unless it is arbitrary and capricious. It is not the function of courts to review the Board's discretion in denying parole or to repass on the credibility of reports received by the Board in making its determination. A reviewing court must make some inquiry into the factual basis for the Commission's decision. But the inquiry is not whether the Commission's decision is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the Commission's conclusions embodied in its statement of reasons.

*Peltier v. Booker*, 348 F.3d 888, 892–93 (10th Cir. 2003) (citations and internal punctuation omitted); *see also Kell v. United States Parole Comm'n,* 26 F.3d 1016, 1019 (10th Cir. 1994) (court may not overturn the Commission's decision "unless there is a clear showing of arbitrary and capricious action or an abuse of discretion") (internal quotation marks omitted).  Respondents concede that Mr. Harper has exhausted his administrative remedies.  *See* Respondent's Preliminary Response (**#12**).

In considering Petitioner's filings, the Court is mindful of his pro se status, and accordingly, reads his pleadings liberally.  *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).  However, such liberal construction is intended merely to overlook technical formatting errors and other defects in his use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  Pro se status does not relieve Petitioner of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court

will treat Petitioner according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

## B. Lack of Personal Jurisdiction over Respondent

Respondents argue that the Petition must be dismissed because this Court lacks personal jurisdiction over the Petitioner's custodian, the warden of the United States Penitentiary (USP) in Lompoc, California.

At the time Petitioner filed his original Application, he was incarcerated at USP-Florence, Colorado. "It is well established that jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change." *Santillanes v. U.S. Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985). The Court has already ruled that Petitioner's transfer to USP-Lompoc, California did not defeat jurisdiction in the District of Colorado. *See* August 5, 2010 Order (**# 6**).

Respondent's reliance on the Tenth Circuit's unpublished decision in *Griggs v. United States*, 79 F. App'x 359 (10th Cir. 2003) is misplaced. In *Griggs*, the Circuit Court noted the jurisdictional rule articulated in *Santillanes*, but found that it was inapplicable to Mr. Griggs because his action in the Oklahoma district court was closed two years before he was transferred to Texas. *Griggs*, 79 F. App'x at 363 n.1. *Griggs* is therefore distinguishable on its facts. Respondent's reliance on *Portley-El v. Figueroa*, 373 F. Appx. 883 (10th Cir. 2010) (unpublished) is likewise unavailing. In that case, the Petitioner's custodian at the time he initiated his habeas action was outside the

6

territorial jurisdiction of the district court.  373 F. App'x at 885.  Accordingly, *Santillanes*

is controlling here and Respondent's argument that the amended petition must be

transferred to the Central District of California because this Court lacks personal

jurisdiction over the Respondent is without merit.

## C.  Applicability of 28 U.S.C. § 2244

Respondent next argues that claims two through seven should be dismissed as

successive pursuant to 28 U.S.C. § 2244(a) because the claims were resolved against

Petitioner by the Ninth Circuit Court of Appeals in *Harper v. Crabtree,* 1997 WL 665710,

127 F.3d 1105 (Table) (9th Cir. Oct. 24, 1997) (unpublished opinion).  Petitions for relief

under 28 U.S.C. § 2241 fall within the ambit of §2244(a).  *See George v. Perrill*, 62 F.3d

333, 334 (10th Cir. 1995).  Section 2244(a) states:

> No circuit or district judge shall be required to entertain an application for a
> writ of habeas corpus to inquire into the detention of a person pursuant to
> a judgment of a court of the United States if it appears that the legality of
> such detention has been determined by a judge or court of the United
> States on a prior application for a writ of habeas corpus.

28 U.S.C. § 2244(a).  "Under 28 U.S.C. § 2244(a) . . . a section 2241 petition [filed by a

federal prisoner] which presents no new grounds for relief is subject to dismissal as a

successive petition unless the ends of justice require consideration of the merits."

*George v. Perrill*, 62 F.3d 333, 334 (10th Cir. 1995); *see also Crawford v. Callahan*

201 F. App'x. 629 (10th Cir. 2006) (unpublished decision) ("A petitioner who previously

filed a § 2241 petition in federal court may not file a successive habeas petition on the

same issue(s), except as provided by 28 U.S.C. § 2255, if that court made a

determination as to whether a writ should issue," citing 28 U.S.C. § 2244(a)).

The bar on successive petitions applies when prisoners challenge different parole

decisions on grounds already determined to be without merit in a prior habeas action.

*See, e.g., Ortloff v. Fleming*, No. Civ.A.4:02-CV-749-Y, 2003 WL 21246098 at *2 (N.D.

Tex. Apr. 24, 2003) (unpublished) (concluding that § 2241 petition was barred as

successive under because petition "does not assert direct and specific challenges to

actions taken by the parole commission relative to the 2001 interim hearing [but instead

raises issues] that were raised or could have been raised in the prior § 2241 petition

[challenging the 1999 decision]"); *accord Ware v. Carey*, 204 F. App'x. 657, 658 (9th

Cir. 2006) (per curiam) (unpublished) (dismissing § 2254 petition as successive

because "none of the claims . . .  is unique to [the latest parole proceeding] or reflects

intervening changes in the law," and claims were addressed on merits in earlier petition)

(citations omitted).

Petitioner filed a § 2241 petition in the United States District Court for the District

of Oregon in 1995 and raised the following claims:

> (1) the Commission's failure to apprise Petitioner of its "modified" reasons
> did not afford him an opportunity to respond, in violation of 28 C.F.R.
> § 2.19(c);
> (2) the Commission's "modified" reasons do not constitute "good cause"
> for its decision of more than forty-eight months above the bottom of
> Petitioner's guideline range;
> (3) the Commission's use against petitioner of information, statements,
> and documents provided by Petitioner in the course of his cooperation
> constitutes a breach of the immunity terms of paragraph 6 of his plea
> agreement;
> (4) the Commission's failure to give petitioner appropriate consideration or
> credit for his cooperation of substantial value constitutes a breach of the
> early parole provisions of paragraph 5 of the plea agreement; and
> (5) after Petitioner fully and completely complied with all of his obligations
> under the plea agreement, it was fundamentally unfair of the Commission
> to:
> (a) use the fruits of petitioner's cooperation against him to justify a
> decision of more than forty-eight months above the bottom of the guideline
> range;

> (b) refuse to give Petitioner any credit or consideration for that cooperation; and
>
> (c) otherwise punish Petitioner as if his offense involved the delivery of "top secret" information which actually caused exceptionally grave damage to the national security and his cooperation was of no value, as opposed to his actual offense behavior which involved the delivery of "secret" information which actually caused minimal damage to the national security and his cooperation was of substantial value.

Amended Application, Ex. H (*Harper v. Crabtree,* No. 95-1573-CO (D. Or. May 17, 1996), Findings and Recommendation of United States Magistrate Judge, at 2-3). The District of Oregon addressed and resolved each claim against Petitioner. *Id.* at 8-18; *see also* August 22, 1996 Order adopting Recommendation (Dkt. No. 24) (*see* www.pcl.uscourts.gov), aff'd in *Harper*, 1997 WL 665710.

    **1.  *Claims two and three***

    In his current § 2241 Petition, Petitioner asserts in claim two that he was entitled to an evidentiary hearing pursuant to *Kastigar v. United States*, 406 U.S. 441 (1972), before the Commission relied on information that was immunized by the plea and cooperation agreement to deny parole. Amended Petition, attachment, at 3. Petitioner argues that claim two is a new claim because the issue of whether a *Kastigar* hearing was required was not decided in his previous petition. Reply, at 19-20.

    In his third claim, Petitioner assets that the Commission relied on information from the post-sentence report in violation of the immunity provisions of the plea and cooperation agreement to deny parole, and thereby deprived him of his right to due process. Amended petition, attachment, at 4. Petitioner argues that this claim was not decided in the earlier petition because the district court's decision addressed other sources of immunized information, but did not address the post-sentence report. Reply,

at 25-26.

The Court is not persuaded that claims two and three present new claims.  In *Harper*, the Ninth Circuit Court of Appeals addressed and resolved Petitioner's claim that the Commission breached the immunity provision of the plea and cooperation agreement by considering certain information provided by Petitioner in his cooperation with the authorities.  Petitioner's assertion that he was entitled to a *Kastigar* hearing as part of the district court's resolution of that claim does not present a distinct claim for relief.  In *Kastigar*, the Supreme Court held that in any subsequent criminal prosecution of a person who has been granted immunity to testify pursuant to 18 U.S.C. § 6002, the prosecution has the burden of proving affirmatively that the evidence proposed to be used is derived from a legitimate source wholly independent of compelled testimony. 406 U.S. at 460.  The Ninth Circuit addressed this claim implicitly as follows: "[T]he district court then reviewed the available information not precluded by the plea agreement and concluded that the factors relied upon by the Commission for its decision were contained in that information.  This conclusion was not: clearly erroneous."  *Harper*, 1997 WL 665710 at *2.  Petitioner's argument that claim three raises a new issue because he specifically challenges the Commission's reliance on information taken from the post-sentence report, as opposed to information derived from other immune sources, is simply a new twist on his earlier claim.  *See Gibson v. Knowles*, 166 F.3d 1220 (Table), 1999 WL 12994 (10th Cir. (Colo.) 1999) (unpublished) (dismissing petition as successive where petitioner "[a]ttempt[ed] to spin differently the same argument he raised in his earlier § 2241 petition").

Furthermore, in 2009, the Commission considered the same factual information

10

concerning Petitioner's espionage offense that was before the Commission in 1994. *See* Response, Exs. 2, 3, 4, 6, 9, 11, 12. Accordingly, the Court finds that Petitioner's second and third claims raise the same grounds he presented in his earlier petition and are therefore barred as successive under 28 U.S.C. § 2244(a). *See Sanders v. United States*, 373 U.S. 1, 16 (1963) (stating that identical grounds for relief may be proved by different factual allegations and may be supported by different legal arguments).

### 2. *Claim four*

In claim four, Petitioner asserts that the Commission violated his right to due process under *Santobello v. New York*, 404 U.S. 257 (1971), by failing to give him appropriate credit or consideration in return for his cooperation with the government, as promised in the plea agreement. Amended Petition, attachment, at 5. In *Harper*, the Ninth Circuit addressed and rejected this claim pursuant to contract law principles, citing *Keller*, 902 F.2d at 1393. *Harper*, 1997 WL 665710, at *2. Petitioner argues that his fourth claim is different from the claim he raised in his prior § 2241 petition because he now characterizes the claim as a due process violation. Reply, at 32-34. However, the same ground for relief packaged in a different legal theory does not present a new claim. *See Sanders*, 373 U.S. at 16. The Court finds that claim four was litigated and decided against Petitioner in his previous § 2241 action. Accordingly, he is barred by 28 U.S.C. § 2244(a) from raising the same claim in this action.

### 3. *Claim five*

Petitioner asserts in claim five that the Commission's decision to deny parole based on the aggravated nature of his offense behavior is not supported by specific facts, as required by 28 C.F.R. § 2.13(d). Amended Application, attachment, at 6. He

11

contends that the delivery offense behavior relied on by the Commission show that he engaged in "typical" espionage behavior which did not warrant a decision outside the guidelines.  *Id.*  Petitioner argues that claim five raises a new issue challenging the Commission's finding of aggravation in relation to his *delivery* offense behavior that was not addressed in his previous petition. *See* Reply, at 39-41.

Pursuant to 18 U.S.C. § 4206, the Parole Commission is required to notify the prisoner following an initial hearing of "the specific factors and information relied upon for any decision outside the range indicated by the guidelines."  28 C.F.R. § 2.13(d).

Petitioner argued in the prior action that the Commission's "modified" reasons given in the Notice of Action on Appeal did not constitute "good cause" for its decision of more than forty-eight months above the lower limit of petitioner's guideline range. Amended Petition, Ex. H (*Harper*, Recommendation of United States Magistrate Judge, at 8-11); *see also Harper*, 1997 WL 665770 at *1.  The Ninth Circuit resolved this claim on the following grounds:

> Harper argues that the Commission's "modified" reasons do not constitute "good cause" for its decision to deny him parole.  Harper's contention lacks merit because the Commission need only consider whether good cause exists if it goes outside the parole guidelines range.  *See* 18 U.S.C. § 4206(c).  Harper was placed in Category 8 for which there is no upper limit.  *See* 28 C.F.R. § 2.20 n.1.  Accordingly, the Commission did not need to consider whether "good cause" existed.
>
> To the extent that Harper argues the Commission failed to state adequate reasons for exceeding the lower guideline range by more than 48 months, the contention lacks merit.  The Commission complied with the requirement that it apprise Harper of the "pertinent case factors" upon which it relied in making its decision. *See* 28 C.F.R. § 2.20 n. 1.  Specifically, the Commission noted the duration of the espionage activities, the sensitive nature of the information delivered, the damage to national security, and the money Harper received for the deliveries. *See id.* To the extent Harper seeks to challenge the substantive factors relied

> upon by the Commission, or the weight accorded to those factors, this
> court lacks jurisdiction to review the claim. *See Roberts* [*v. Corrothers*],
> 812 F.2d [1173,] 1178 [9th Cir. 1987)] (evaluation of evidence regarding
> the "nature and circumstances of the offense" is within discretion of
> Commission).

*Harper*, 1997 WL 665710, at *1.

The bases for the Commission's findings in 1994 and in 2009 that a decision

more than 48 months above the minimum of the guideline range is warranted are the

same.  The May 18, 2009 Notice of Action states, in pertinent part:

> After review of all relevant factors and information presented, a decision
> more than 48 months above the minimum of the guideline range is
> warranted ***because the same reasons you have previously been
> denied parole are still applicable in your case***.  The nature of your
> offense is aggravated in that for a period between 1979 and 1981, utilizing
> "secret" and "classified" information relating to two U.S. Ballistic missile
> programs you received from your girlfriend and later your wife, you
> delivered the information for money to a potentially hostile (Warsaw Pact)
> foreign government.  Documents that were found in your possession, but
> apparently not transferred, would have expanded the risk to the United
> States defense if they had been delivered.  You knowingly exposed the
> United States to the risk that this information would have seriously
> compromised its security in time of war.

Response, Ex. 11.  The March 2, 1994 Notice of Action, as modified on appeal, states:

"After review of all relevant factors and information presented, a decision more than 48

months above the minimum guideline range is warranted because of the aggravated

nature of your offense behavior: Specifically, . . ." Response Ex. 6 (discussing same

facts relied on by Commission in May 2009 Notice of Action).

The Ninth Circuit considered and rejected Petitioner's challenge to the 1994

parole decision under an abuse of discretion standard.  The same standard applies to

Petitioner's claim five, *see Kell*, 26 F.3d at 1019, in which he argues different facts and

legal grounds, but presents essentially the same challenge to the Commission's

decision to deny parole based on its determination that his offense behavior was aggravated. *See Sanders*, 373 U.S. at 16. The Court finds that five was litigated and decided against Petitioner in his previous § 2241 action and Petitioner is therefore barred by 28 U.S.C. § 2244(a) from raising the same claim in this action.

### 4. *Claim Six*

For his sixth claim, Petitioner asserts that the Commission relied on an inaccurate factual predicate in determining that the nature of his offense was aggravated. He argues that the documents found in his possession, but not actually delivered, would not have increased the security risk to the United States if delivered. Amended Petition, attachment, at 7. Petitioner argues that the Ninth Circuit did not address this specific contention in the earlier § 2241 proceeding. Reply, at 45-46. Petitioner further asserts that the Commission engaged in improper double counting when it relied on the possession-delivery behavior to assign a category eight offense severity level to Petitioner's crime and as an aggravating case factor. *Id.*

Petitioner's claim that the Commission relied on an inaccurate factual predicate in determining that the nature of his offense was aggravated was resolved by the Ninth Circuit in the earlier § 2241 proceeding, as discussed with regard to claim five above. Again, Petitioner's attempt to present the same claim couched in a different legal argument is unavailing. *See Sanders*, 373 U.S. at 16. In addition, the Ninth Circuit rejected Petitioner's double counting claim summarily on the basis that "[b]ecause there is no upper limit for Category Eight offenses, the Commission did not engage in 'double counting.'" *Harper*, 1997 WL 665710, at *2 (citing *Walker v. United States*, 816 F.2d 1313, 1316 (9th Cir. 1987) (per curiam)).

The Court finds that the issues raised by Petitioner in claim six were litigated and decided against him in the earlier § 2241 proceeding.  Accordingly, he is barred by 28 U.S.C. § 2244(a) from raising those issues in this action.

**5.  *Claim seven***

In claim seven, Petitioner asserts that the Commission failed to "lawfully" determine the seriousness of his offense because the Commission based its determination on the potential for harm that was apparent to Petitioner at the time of the offense and not the actual damage estimated by the Department of Defense (DOD).  Amended Petition, attachment, at 8.  In support of his claim, Petitioner argues that "violence or potential harm alone does not determine the seriousness of a crime nor the strength of society's interest in deterrence and punishment," quoting *Rummel v. Estelle*, 445 U.S. 263, 275, (1980).  Petitioner further maintains that the only evidence of actual or potential damage caused by his offense is immunized information.  *Id.*  Petitioner argues that this claim is new because the Ninth Circuit did not address the issues presented in the earlier § 2241 proceeding.  Reply, at 51.

The first ground asserted in claim seven is yet another verse of the same song.  Petitioner is once again challenging the Commission's determination that the nature of his offense behavior was "aggravated" and that a decision more than forty-eight months above the minimum guideline range is not warranted in his case.  The Court is not persuaded by Petitioner's artful efforts to present the same challenge from a different avenue of legal attack.  *See Sanders*, 373 U.S. at 16.   In addition, Petitioner's assertion that the Commission relied on immunized information to determine the seriousness of his offense raises the same ground he presented in his earlier petition, as discussed

15

with regard to claims two and three above.  The Court therefore finds that the issues

raised by Petitioner in claim seven were litigated and decided against him in the earlier

§ 2241 proceeding and he is barred by 28 U.S.C. § 2244(a) from raising those issues in

this action.

## IV.  The  Merits

### 1.  *Claim One*

Petitioner asserts in his first claim that the Commission failed to adhere to its own

regulations by: (a) ignoring information favorable to Petitioner (the plea and cooperation

agreement); (b) relying on the reasons of the concurring panel provided after the

hearing, without affording notice to Petitioner; and, (c) in issuing a deficient Notice of

Action form.

Petitioner first contends that the Commission ignored his substantial cooperation

with the Government in denying parole.  However, the fact that Petitioner did not receive

a presumptive parole date does not mean that favorable evidence was ignored.  *See*

*Nunez-Guardado v. Hadden*, 722 F.2d 618, 621 (10th Cir. 1983); *Jones v. U.S. Bureau*

*of Prisons*, 902 F.2d 1178, 1184 (8th Cir. 1990).  The weight to be given a mitigating

factor is within the Commission's discretion.  *Id.*  The Court will presume that the

Commission considered the Petitioner's evidence so long as there "is a rational basis in

the record for the Commission's conclusions which are embodied in its statement of

reasons."  *Peltier*, 348 F.3d at 893 (quoting *Misasi v. U.S. Parole Comm'n*, 835 F.2d

754, 758 (10th Cir. 1987) (internal quotations and citation omitted).

The factual bases for the Commission's decision to deny parole derive primarily from

Petitioner's presentence report and his prison disciplinary proceeding.  *See* Response,

Ex. C at 6.  Moreover, it is clear the Commission did consider the terms of the plea and cooperation agreement in evaluating Petitioner's parole eligibility.  *Id.*  Further, there is a rational basis in the record for the  the Commission's conclusions as set forth in the statement of reasons in the May 18, 2009 Notice of Action.  *See* Response, Ex. 2, 9, 11. Accordingly, the Court finds that the Commission did not abuse its discretion in the weight that it gave Petitioner's evidence of cooperation with the government.

Petitioner next argues that the Commission violated the notice provisions of 28 C.F.R. § 2.19(c) because the Commission adopted the reasoning of the concurring panel after the hearing, instead of the reasoning of the hearing examiner.  Petitioner thus maintains that he did not have an opportunity to respond at the hearing to the reasons relied on by the Commission to deny parole.  Section 2.19(c) states:

> The Commission may take into account any substantial information available to it in establishing the prisoner's offense severity rating, salient factor score, and any aggravating or mitigating circumstances, provided the prisoner is apprised of the information and afforded an opportunity to respond.  If the prisoner disputes the accuracy of the information presented, the Commission shall resolve such dispute by the preponderance of the evidence standard; that is, the Commission shall rely upon such information only to the extent that it represents the explanation of the facts that best accords with reason and probability.

28 C.F.R. § 2.19(c).  Petitioner was provided with an opportunity to challenge the accuracy of the information relied on by the Commission at his fifteen-year reconsideration hearing.   The executive reviewer recommended that parole be denied based on the same information considered by the hearing examiner in recommending that a presumptive parole date be granted.  *See* Response, Ex. 9.  A third examiner reviewed the case and agreed with the executive reviewer (the concurring panel).  The concurring panel did not consider any new evidence.  Indeed, aside from his 2007

17

institutional infraction, Petitioner was denied parole in 2009 "because the same reasons you have previously been denied parole are still applicable in your case."  Response, Ex. 11, at 1.  Moreover, as discussed in the notice of action on appeal, the recommendation of a hearing examiner does not constitute the official decision of the Commission.  *See* 28 C.F.R. § 2.23.  And, nothing in the language of 28 C.F.R.        § 2.19(c) affords the prisoner the right to challenge the Commission's reasoning *at the time of the hearing.*  The prisoner has a right to appeal a notice of decision, which Petitioner exercised in this case.  *See* 28 C.F.R. §§ 2.26, 2.27.  Accordingly, the Court finds that Petitioner's claim that the Commission failed to comply with 28 C.F.R. § 2.19(c) is without merit.

Finally, Petitioner asserts that the Notice of Action was not on the proper form and was not signed by the Commissioners, as required by the parole guidelines manual.  A claim of mere technical deficiencies is not the proper subject of federal habeas corpus relief.  *See* 28 U.S.C. § 2241 (c)(3) (writ of habeas corpus is available to prisoner who is "in custody in violation of the Constitution or laws or treaties of the United States").  The Court finds that the Notice of Action satisfies the applicable federal statute.  *See* 18 U.S.C. §4206(b) (stating that the Commission shall furnish the eligible prisoner with a written notice of its determination within twenty-one days of the parole determination proceeding, stating with particularity the reasons for denial of parole).

Petitioner has failed to demonstrate an entitlement to federal habeas relief for his first claim.  Claim one will therefore be dismissed in its entirety.

**2.  *Claim Eight***

Petitioner asserts in his eighth claim that the Commission failed to adhere to its

regulations, and thereby deprived him of due process, when the Commission failed to apply the United States Sentencing Guidelines in his case because the Sentencing Guidelines "have obvious relevance to the Parole Guidelines, [and, therefore] the[ ] [Sentencing Guidelines] should be applied in order to make parole decisions roughly equivalent to those produced by the Sentencing Guidelines."   Amended Petition, attachment, at 9 (internal quotation marks omitted).

The short answer to Petitioner's claim is that the Sentencing Guidelines do not apply to him.  He was convicted in 1984.  The Sentencing Guidelines apply only to offenses committed on or after November 1, 1987.  Sentencing Act of 1987, Pub.L. No. 100–182, § 2(a), 101 Stat. 1266 (amending Pub. L. No. 98–473, § 235(a)(1), 98 Stat. 2031)).  Before November 1, 1987, the Parole Commission and Reorganization Act of 1976 (PCRA) governed the terms of federal sentences.  Pub.L. No. 94-233, § 2, 90 Stat. 219 (codified as amended at 18 U.S.C. §§ 4201-4218 (1982) (repealed 1984, effective 1987)).  The PCRA empowered the Parole Commission to evaluate prisoners' behavior and to award them early release on the basis of positive institutional adjustment. *See* 18 U.S.C. § 4206.  Section 4206, in turn, directed the Commission to make its decisions in light of the parole guidelines set forth at 28 C.F.R. § 2.20. Further,  the Commission is allowed to depart from parole guidelines where appropriate. *Id.*  The parole determination criteria of 18 U.S.C. § 4206 remain applicable to "old law" prisoners who were convicted before November 1, 1987.  See *Bledsoe v. U.S.,* 384 F.3d 1232, 1234 (10th Cir. 2004) (discussing Sentencing Act of 1987, Pub.L. 100-182, § 2(b)(2), 101 Stat. 1266 (1987) (1987 amendment)).

Fundamentally, the Commission was not required to apply the Sentencing

Guidelines in Petitioner's case because he is an "old law" prisoner who committed his offense before November 1, 1987.  *See Bledsoe,* 384 F.3d at 1234.  Petitioner's argument that the Commission should nonetheless be compelled to apply the Sentencing Guidelines in calculating his parole eligibility rests on his perceptions of basic fairness rather than any actual illegality.  However, because the Commission is not required by statute or the federal Constitution[1]  to apply the Sentencing Guidelines to Petitioner, he is not entitled to federal habeas relief for his eighth claim.  *See* 28 U.S.C. § 2241(c)(3).

### 3.  *Claim Nine*

Petitioner asserts in claim nine that the Commission deprived him of due process when it issued a decision that was inconsistent with other decisions involving espionage offenses committed in similar circumstances, contrary to the legislative intent of 18 U.S.C. § 4206(a), and the Commission's internal procedures.  Amended Petition, attachment, at 10-11 (citing P.L. 94-233 Parole Commission and Reorganization Act, House Conf. Report No. 94-838 at  (Feb. 23 , 1976) (discussing Section 4206)).  Respondent has construed this claim as asserting an equal protection violation.  *See* Answer, at 10.

───────────────────

[1]To the extent Petitioner's argument could be construed liberally as an assertion that he is being denied equal protection of the law because persons who committed crimes similar to his after November 1, 1987 are being treated more leniently under the U.S. Sentencing Guidelines, the Court notes that Petitioner is in no worse of a position than those who were sentenced at the same time as he under the laws applicable at that time. *See Baker v. Director, U.S. Parole Com'n,* 916 F.2d 725, 727 (D.C. Cir. 1990); *see also Borelli v. True*, No. 99-3234, 1999 WL 1188847at *2 (10th Cir. (Colo.) Dec. 14, 1999) (unpublished). Further, because Congress had a rational basis for creating a new sentencing system and applying it prospectively, the Commission's reliance on its guidelines rather than the Sentencing Guidelines for "old law" prisoners does not violate equal protection principles. *See Swinson v. United States Parole Comm'n*, 682 F.Supp. 29, 32 (E.D.N.C. 1988), *aff'd,* 849 F.2d 606 (4th Cir.); *Borelli*, 1999 WL 1118847 at *2; *McCollum v. U.S. Parole Comm'n*, No. 90-3291-R, 1991WL 31040 at *2 (D. Kan. Feb. 28, 1991) (unpublished).

Petitioner alleges that he compiled information on "similar offenses committed under similar circumstances," including the Commission's decisions in those cases, as well as the sentencing court's findings, which he presented to the NAB and relies on in support of his ninth claim. Amended Petition, attachment, at 10; and Ex. E at 18. He contends that the data from the other espionage offenders shows that he has been treated more egregiously by the Commission than offenders with more serious offense behaviors and less favorable parole prognoses under the parole guidelines. *Id.*, Ex. E at 19 and attached Table of Espionage Offenders.

Pursuant to 18 U.S.C. § 4206, the Commission must consider "the nature and circumstances of the offense and the history and characteristics of the prisoner" in making a parole determination. All espionage offenses are rated as Category Eight severity by the Parole Commission pursuant to 28 C.F.R. § 2.20, Chapter 10, Supchapter C, Paragraph 1021, and therefore all receive guidelines with no upper limit. In addition, Petitioner concedes that the Commission must consider individual offender circumstances to determine whether the espionage offense involved aggravating conduct, as opposed to what Petitioner characterizes as the typical "espionage" case. Amended Petition, attachment, at 10. The Commission determined that "[t]he nature of [Petitioner]'s offense is aggravated" for the reasons unique to Petitioner, as detailed in the Notice of Action. Response, Ex. 11.

Furthermore, Petitioner has not shown that any of the espionage offenders listed in his Table participated in a cigarette smuggling conspiracy while imprisoned. The May 18, 2009 Notice of Action was based on the Commission's findings that: (a) "the nature of your offense is aggravated in that [detailing findings relating to Petitioner's espionage

21

offense]"; and, (b) "within three years of this hearing, you participated in a criminal conspiracy to bring contraband into a federal correctional institution." *Id.* The Commission concluded:  "Your actions have shown that you are willing to violate the law for personal profit.  If you are released, it is unlikely that you would abide by the law." *Id.* at 2.

Section 4206(a) provides that the Commission may release a prisoner from his sentence if the Commission determines: "(1) that release would not depreciate the seriousness of his offense or promote disrespect for the law; and (2) that release would not jeopardize the public welfare."  The Commission's determination that "it is unlikely that [Petitioner] would abide by the law," is based on the Commission's findings that Petitioner is "willing to violate the law for personal profit," as demonstrated by both his recent institutional infraction and past espionage behavior.  These findings are specific to Petitioner's case and precludes Petitioner's claim that the Commission's decision was contrary to Section 4206(a).  Further, because Petitioner has failed to show that he is similarly situated to the other espionage offenders, he has failed to demonstrate an equal protection violation.  *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440 (1985) (Equal Protection Clause of Fourteenth Amendment requires that all persons similarly situated be treated alike); *Buckley v. Valeo*, 424 U.S. 1, 93 (1976) (recognizing that the "[e]qual protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment").  Accordingly, Petitioner is not entitled to federal habeas relief for his ninth claim.

### 4.  *Claim Ten*

For his tenth claim, Petitioner asserts that the Commission's retroactive

application of its fifteen-year reconsideration rule violated the Ex Post Facto Clause because the requisite risk of increasing the measure of punishment in Petitioner's case is inherent in the framework of the new Rule.  Amended Petition, attachment, at 11.

At Petitioner's initial parole hearing on January 4, 1994, he was continued for a 15-year reconsideration in January 2009.   At the time of Petitioner's conviction in May 1984, the regulations concerning parole reconsideration hearings,  28 C.F.R. §§ 2.12(b) and 2.14(c), provided for a ten-year reconsideration period.  Effective October 1, 1984, the regulations were amended to read: "Following initial hearing, the Commission shall (1) set a presumptive release date (either by parole or by mandatory release) within fifteen years of the hearing; (2) set an effective date of parole; or (3) continue the prisoner to a fifteen year reconsideration hearing pursuant to § 2.14(c)."  *See* 49 FR 34208-01, 1984 WL 117501 (Aug. 29, 1984).   Following the May 2009 Notice of Decision, Petitioner argued to the NAB that retroactive application of the fifteen-year reconsideration rule violated the ex post facto clause and requested that his case be remanded for a ten-year reconsideration hearing *nunc pro tunc*.[2]  Amended Petition, Ex. E, at 1.  The NAB denied this claim on two grounds: (1) that parole guidelines are not laws subject to the meaning of the Ex Post Fact Clause; and (2) that Petitioner received four statutory interim hearings since his initial parole hearing in 1994.  Amended

---

[2]The Court notes that Petitioner's claim that he was entitled to a ten-year reconsideration hearing in 2004 satisfies Article II's case and controversy requirement because he did not receive a prison disciplinary conviction for conspiracy to import tobacco into an institution until 2007.  Under the circumstances, it is possible that the outcome of a ten-year reconsideration hearing would have been different. *See Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) ("Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." A federal court lacks jurisdiction unless "a litigant [has] suffered, or [is] threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.")

Petition, Ex. F at 1.

The Constitution prohibits Congress from passing any ex post facto law. U.S. Const. art. I, § 9, cl. 3. In order to fall within the ex post facto prohibition, a "law must be retrospective, that is, it must apply to events occurring before its enactment; and . . . it must disadvantage the offender affected by it." *Miller v. Florida*, 482 U.S. 423, 430 (1987) (internal quotations and citations omitted). "Retroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept." *Garner v. Jones*, 529 U.S. 244, 250 (2000).[3] A retroactive change to a parole law violates the Ex Post Facto Clause if it creates "a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id.* (quoting *California Dep't of Corr. v. Morales*, 514 U.S. 499, 509 (1995)). "When the rule does not by its own terms show a significant risk [of heightened punishment], [the petitioner] must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule." *Garner*, 529 U.S. at 255.

Petitioner has not demonstrated that the Commission's amendment to the parole reconsideration period, on its face, shows a significant risk of increasing his term of imprisonment.   Following his initial parole hearing in 1994, Petitioner received statutory interim hearings in 1999, 2002, 2004, and 2006.  Response, Ex. 8.  At each of these

---

[3]Respondent argues that the Commission's parole guidelines are not laws within the meaning of the Ex Post Facto Clause, citing *Resnick v. U.S. Parole Comm'n*, 835 F.2d 1297, 1301 (10th Cir. 1987). *But see Smith v. Scott*, 223 F.3d 1191, 1193-94 (10th Cir. 2000) (concluding that "an agency regulation that is legislative in nature is encompassed by the ex post facto prohibition because a legislative body 'cannot escape the Constitutional constraints on its power by delegating its lawmaking function to an agency'") (internal quotations and citation omitted).  However, *Garner* provides the controlling analysis, as discussed above.

hearings, Petitioner was afforded an opportunity to demonstrate why he should receive an earlier reconsideration date. *Id.*, Ex. 7.  The amendment, as written, does not, and did not, pose a significant risk of lengthening Petitioner's term of imprisonment because the Commission afforded Petitioner four opportunities to demonstrate a change in circumstances that would warrant an earlier reconsideration date, two of which occurred during the ten-year period implicated by the former regulation.  *See Garner*, 529 U.S. at 254, 256 (concluding that terms of Georgia parole board regulation did not pose a significant risk of lengthening the respondent's time of imprisonment where eight year reconsideration limit was a maximum term and the parole board has discretion to permit expedited parole reviews if it received new information); *Henderson v. Scott,* 260 F.3d 1213, 1217 (10th Cir. 2001) (holding that amendment providing for less frequent parole reconsideration was not a facial ex post facto violation where amendment allowed Oklahoma Parole Board to defer reconsideration up to five years, but allowed Board to modify the reconsideration date if it received new information).

      To prevail on his Ex Post Facto Claim, Petitioner must therefore show that application of the fifteen-year reconsideration rule in his case would result (or has resulted) in a significant risk of a longer period of incarceration.  Petitioner argues that a comparison of his circumstances to the cases of other espionage offenders, as discussed in claim nine, shows that the amendment has been applied to extend the length of his imprisonment.  This argument is illogical, however.  Under the ex post fact analysis of *Garner*, Petitioner must demonstrate that his circumstances have changed sufficiently in light of his conviction and sentence to warrant an earlier parole consideration date.  *See Henderson*, 260 F.3d at 1217; *see also Garner*, 529 U.S. at

257 ("Absent any demonstration to the contrary from respondent, we respect the Board's representation that inmates, upon making a showing of a 'change in their circumstance[s]' or upon the Board's receipt of 'new information,' may request expedited consideration.").  If Petitioner had such information, he should have presented it to the Parole Commission at one of his statutory interim hearings.  *Id.* Instead, Petitioner's contention that application of the amended reconsideration regulation in his case increased his punishment is based on pure speculation, which is insufficient to establish an ex post facto violation.  *See Morales*, 514 U.S. at 509 (when the amendment creates only "the most speculative and attenuated possibility" of increasing the measure of punishment, it is "insufficient under any threshold" to violate the Ex Post Facto Clause).  Accordingly, the Court finds that Petitioner's tenth claim is without merit.

### 5.  *Claim Eleven*

Petitioner asserts in his eleventh claim that the Commission failed to comply with its parole guidelines in assigning an offense severity rating and guideline range to his institutional infraction.  Amended Petition, attachment, at 12.  Petitioner contends that his offense of providing or possessing contraband (tobacco) in prison in violation of 18 U.S.C. § 1791, a class B misdemeanor with a maximum statutory sentence of six months, should have been assigned an offense severity rating of Category One, pursuant to 28 C.F.R. § 2.20, Chapter Twelve (Miscellaneous Offenses).  *Id.*

The government responds that the Commission applied an offense severity rating of Category Three because Petitioner's offense involved a conspiracy to import tobacco into the prison for the purpose of distribution and he gained approximately

$11,000 from the illegal activity.  *See* 28 C.F.R. §§ 2.36(a)(2)(ii); 2.20, Chapter Five,

Subchapter C, 521, and 2.20, Chapter Five, Subchapter A, 501(e).

Chapter Twelve of the Parole Guidelines (Miscellaneous Offenses) states:

If an offense behavior is not listed, the proper category may be obtained
by comparing the severity of the offense behavior with those of similar
offense behaviors listed in Chapters One–Eleven. If, and only if, an
offense behavior cannot be graded by reference to Chapters One–Eleven,
the following formula may be used as a guide [based on the maximum
sentence authorized by statute for the offense].

28 C.F.R. § 2.20, Chapter 12.

Petitioner conveniently ignores the first sentence of Chapter Twelve.  His prison

disciplinary conviction was for exchanging money for contraband.  *See* Amended

Response, Ex. 9, at 3. 6.  Petitioner's offense behavior involved a conspiracy to import

tobacco into the prison for the purpose of distribution and he gained approximately

$11,000 from the illegal activity.  *Id.*  The pre-hearing assessment report reflects that

Petitioner admitted to his commission of the prison disciplinary infraction at his fifteen-

year consideration hearing.  *Id.* at 3.  Petitioner further admitted that he received a

misdemeanor conviction in the District Court for the District of Oregon in 2007 for the

"Introduction of Contraband into an Institution," for which he served four months in the

Portland County Jail.  *Id.* at 3. Although Petitioner prefers to characterize his offense as

mere "possession," there was a rational basis in the record for the Commission's

determination that Petitioner's offense behavior was similar to the offense behavior of

"trafficking in contraband cigarettes," in violation of 18 U.S.C. § 2342. *See* 28 C.F.R. §§

2.20, Chapter Five, Subchapter C, 521, and 2.20, Chapter Five, Subchapter A, 501(e).

As such, the Commission's assignment of a category three offense severity level to

Petitioner's institutional offense was neither arbitrary nor capricious, or a violation of due process.  Petitioner need not have been convicted of a violation of 18 U.S.C.      § 2342 to warrant the Commission's assignment of that category under the parole guidelines. *See* 28 C.F.R. § 2.20, Chapter Twelve.

### 6.  *Claim Twelve*

For his twelfth and final claim, Petitioner asserts that the Commission failed to comply with its own regulations when it gave him a salient factor score rating of six, which indicates that his parole prognosis is good, but denied him a presumptive parole date.  Amended Petition, attachment, at 13.  He contends that the NAB's decision affirming the Commission's Notice of Action on the basis that his parole prognosis has not improved because his actions "continue to show a pattern that you are willing to violate the law for personal profit," was arbitrary and capricious.  *Id.*, citing Ex. F, at 3.

The parole guidelines establish a presumptive parole date by rating the severity of an offender's crime and his salient factor score, which is the risk that he will violate parole.  *Montoya v. U.S. Parole Com'n*, 908 F.2d 635, 636 (10th Cir. 1990) (citing 28 C.F.R. § 2.20).  The Commission has discretion to depart from the parole prognosis indicated by the offender's salient factor score where clinical evaluation indicates a higher or lower risk of parole violation.  28 C.F.R. § 2.20(e).  However, the Notice of Action does not reflect that the Commission relied on Section 2.20(e) in Petitioner's case.  Petitioner's § 2.20 guideline range, adjusted for his prison disciplinary conviction, is 112 - 999 months (no upper limits for the category eight offense of espionage).  Response, Ex. 9, at 4.  According to the Notice of Action, the Commission denied parole because "the same reasons you have previously been denied parole are still applicable

28

in your case.  The nature of your offense is aggravated in that. . . . " Response, Ex. 11, at 1; *see also id.*, Ex. 9 (salient factor score sheet).  The Commission also found that Petitioner committed the prison disciplinary offense of exchanging money for contraband three years prior to his fifteen-year consideration hearing, an offense that involved Petitioner conspiring with others to import tobacco into the prison for the purpose of distribution, for which he profited approximately $11,000.  *Id.*, Ex. D at 2. Petitioner's original conviction was for espionage, in which he sold classified government documents to Eastern Block intelligence agents for financial gain.  There is a rational basis in the record for the Commission's determination that "[Petitioner's] actions have shown that [he] is willing to violate the law for personal profit" and that if "[Petitioner] is released, it is unlikely that [he] would abide by the law." Response, Ex. 11, at 2.   Petitioner has failed to show that the Commission's decision to deny parole was arbitrary or capricious.  As such, Petitioner is not entitled to habeas relief for claim twelve.  *See Peltier*, 348 F.3d at 892–93; *Kell,* 26 F.3d at 1019.

Accordingly, it is

**ORDERED** that the Amended Application for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (**# 7**) is **DENIED** as follows:

(1) Claims two, three, four, five, six, and seven are dismissed as successive, pursuant to 28 U.S.C. § 2244(a);

(2) Claims one, eight, nine, ten, eleven and twelve are dismissed on their merits.

The Clerk shall close this case.

Dated this DATED this 21st day of July, 2011.

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge